UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARNELL GILMER,

        Plaintiff,

      v.                                                        Case No. 20-C-324

CAPT. ELSINGER, et al.,

        Defendants.

## SCREENING ORDER

Plaintiff Arnell Gilmer, who is currently serving a state prison sentence at Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on Plaintiff's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Plaintiff has requested leave to proceed without prepayment of the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2), and has been assessed and paid an initial partial filing fee of $27.41. Plaintiff's motion for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997).

To state a cognizable claim under the federal notice pleading system, Plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

## ALLEGATIONS CONTAINED IN THE COMPLAINT

Plaintiff alleges that, on June 11, 2019, at approximately 6:15 a.m., Plaintiff told his cellmate that he had severe chest pains and that it was hard for him to breathe. Plaintiff's cellmate called out to a female correctional officer on the cat walk and informed her that Plaintiff had a medical emergency. The officer responded, "Tell him to put in a Health Request Form." Compl. ¶ 10, Dkt. No. 1. Plaintiff's cellmate asked, "Did you hear what I said? My cellee has a medical emergency. Get some help." *Id.* ¶ 11. Sergeant Lannoye came to their cell front and asked Plaintiff, "What is your medical emergency?" *Id.* ¶ 12. While in pain and laying in bed, Plaintiff told Sergeant Lannoye that it was hard to talk because he was short of breath and that the left side

2

of his chest hurt. Sergeant Lannoye stated that Plaintiff looked fine to him and walked away from the cell. Plaintiff said, "Threats," because he knew it was the only way to get Sergeant Lannoye to call a supervisor so that he could get emergency medical treatment.

Captain Elsinger was called to Plaintiff's cell and told Plaintiff to stick his hands out of his cell door slot to be handcuffed and taken to segregation. Plaintiff asked Captain Elsinger to call the nurse. Captain Elsinger told Plaintiff, "If you don't get up and come to the door so we can cuff you, you are not going to get medical treatment." *Id.* ¶ 18. Plaintiff forced himself out of bed and reached through the cell door trap to be handcuffed. As Plaintiff walked down the hallway, he felt dizzy and blacked out. Plaintiff alleges that, when he woke up, Captain Elsinger was digging his knuckles into Plaintiff's chest while ordering Plaintiff to respond. Plaintiff claims he passed out again, and when he woke up, he was strapped tightly in a restraint chair in the segregation unit's nursing station. Captain Elsinger dug his knuckles into Plaintiff's chest, ordering Plaintiff to respond.

Plaintiff alleges John Doe officers #1–3 took Plaintiff out of the restraint chair without a nurse present. Plaintiff requested to be seen by medical staff. A nurse then took Plaintiff's vitals. Plaintiff claims the left side of his foot was swollen and numb, the left side of his face was sagging, and he stuttered when he talked. The officers took Plaintiff's clothing and issued him segregation clothing. Around every five days, John Doe officers #1–3 would allow a nurse to take Plaintiff's vitals. The nurse would give Plaintiff a different prescription for pain medicine. Plaintiff alleges that they never tested Plaintiff's blood to determine what was wrong with him, even though his vitals were always very high. Plaintiff claims that one month after the incident, he was seen by a doctor. He states that, before and after he saw the doctor, he would press his medical emergency

3

button when he had chest pain but his calls were ignored or John Doe officers #4–9 would advise him to submit a medical request slip and told him he did not have a medical emergency.

**THE COURT'S ANALYSIS**

Plaintiff asserts in his complaint that Defendants denied him medical care. "To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Plaintiff only sues Defendants in their official capacities. Suits against prison employees in their official capacities are suits against the state itself. Under the Eleventh Amendment, a state may not be held liable for damages in a civil rights action. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Because Plaintiff only sues the defendants in their official capacities, his complaint must be dismissed for failure to state a claim upon which relief can be granted.

Even if Plaintiff had brought this lawsuit against the defendants in their individual capacities, his complaint does not provide enough facts to determine whether he states a claim upon which relief can be granted. The Eighth Amendment prohibits "cruel and unusual punishments" and imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that the inmate receives adequate medical care. *Farmer v. Brennan*, 511 U.S. 823, 832 (1994). Prison officials violate the Constitution if they are deliberately indifferent to a prisoner's serious medical needs. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). To state a claim based on deficient medical care, a plaintiff must demonstrate that he

4

had an objectively serious medical condition and that the defendants were subjectively aware of and consciously disregarded that condition. *Id.* at 837. A medical need is considered sufficiently serious if the prisoner's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citation omitted).

Plaintiff has failed to allege facts that make it plausible to state a claim. In particular, Plaintiff does not allege what his medical problem was or that it was a serious medical condition, or what injury he suffered as a result of not receiving a medical evaluation. He must have some idea of what that condition is; he alleges he was seen by a doctor within the month. What did the doctor diagnose? What treatment did he prescribe? In addition, the complaint does not allow each of the named defendants or the court to understand what the defendants are alleged to have actually done or not done that caused him injury. Plaintiff needs to tell the court and the defendants the who, what, when, and where of his claim, and what injury or damage the defendants' actions actually caused Plaintiff. The essential function of a complaint is to provide such notice, *see* Federal Rule of Civil Procedure 8(a), and the defendants should not be forced to incur the cost of defending themselves in a federal lawsuit absent some indication that Plaintiff has a cognizable federal claim and enough information so they know what his claim is about.

If Plaintiff wants to proceed, he must file an amended complaint curing the deficiencies in the original complaint as described herein. Such amended complaint must be filed on or before **July 10, 2020**. Failure to file an amended complaint within this time period may result in dismissal of this action.

Plaintiff is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the

prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If an amended complaint is received, it will be screened pursuant to 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that on or before **July 10, 2020**, Plaintiff shall file an amended pleading curing the defects in the original complaint as described herein.

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the $322.59 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is located.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is in effect at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh

Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.  If Plaintiff is no longer incarcerated at a Prisoner E-Filing Program institution, he will be required to submit all correspondence and legal material to:

>Honorable William C. Griesbach
>c/o Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>125 S. Jefferson Street, Suite 102
>Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.  It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.  In addition, the parties must notify the Clerk of Court of any change of address.  Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this 13th day of April, 2020.

>s/ William C. Griesbach
>William C. Griesbach, District Judge
>United States District Court - WIED